THE HONORABLE, THE SENATE *Page 116 
By Senate Resolution 22, you have requested my opinion on certain questions involving Assembly Bill 128. Assembly Bill 128, which has been adopted by the Assembly and is now under consideration in the Senate, is designed to create a system of state enforcement against discharges of pollutants to waters of the state which directly parallels and is congruent with the federal water pollution control program set up under the Federal Water Pollution Control Act Amendments of 1972, (P.L. 92-500). Section 402 of that Act creates a National Pollutant Discharge Elimination System (NPDES) under which the federal Environmental Protection Agency (EPA) is to administer a system of permits for all discharges of pollutants to waters of the United States. Section 402 (b), however, provides that the system of discharge permits can be administered by the states themselves, provided they fulfill certain conditions, including a statement from the attorney general of the state to the effect that the laws of the state provide adequate authority to carry out a program that will meet all the requirements of sec. 402. Assembly Bill 128 is expressly designed to meet all those requirements.
Your resolution refers specifically to the declaration of goals and policy contained in sec. 101 of the Federal Water Pollution Control Act Amendments of 1972 (hereinafter referred to as the "federal act") and, specifically, to sec. 101 (a) (4) which states that:
"It is the national policy that Federal financial assistance be provided to construct publicly owned waste treatment works;"
In light of that stated goal, you ask the following questions regarding an amendment to Assembly Bill 128 which would link federal financial assistance to required construction projects under the proposed state permit program:
"1. Can the availability of federal funds be tied to required construction projects as a state law or as a condition of a discharge permit without violating the 1972 Federal Water Pollution Control Act [sic] (P.L. 92-500)?
"2. Can the availability of federal funds effectively be tied to required construction projects in any other way without violating the 1972 Federal Water Pollution Control Act [sic] (P.L. 92-500)?"
It is my opinion that the answer to both questions is no. *Page 117 
Without going into great detail on the NPDES discharge system, it can be basically stated that the system, as it relates to publicly owned waste treatment works, sets certain minimum standards for discharges, and certain time limits for achieving those standards. EPA cannot approve a state discharge permit program unless state law provides for minimum standards and time limits that are at least as stringent as those enacted by, or promulgated under, the federal act. Sec. 402 (b), Federal Act. Assembly Bill 128 is designed to authorize the Department of Natural Resources to carry out a program to enforce such standards and time limits.
An amendment to Assembly Bill 128 tying its requirements to the availability of federal funds would have the effect of tolling or extending time limits under state law beyond those established by the federal act. This is because the federal act contains no express language guaranteeing that federal financial assistance will be made available to each and every publicly owned waste treatment works within the time limits established under the federal act. Section 101 (a) (4) of the act, quoted earlier, constitutes a declaration of goals and policy, but does not in itself expressly or impliedly guarantee the availability of funding within the prescribed time limits, nor do I find any such guarantee elsewhere within the act. It is entirely possible that the appropriation for federal financial assistance provided for within the act will be insufficient to provide assistance to each and every public sewage treatment works. Furthermore, even if the appropriation is sufficient, there is currently some question as to whether the entire amount of the appropriation will be expended by EPA.
Absent a guarantee within the federal act that federal financial assistance would be made available prior to the deadlines set forth in the act, it is clear that the tying of time limits under state law to the availability of federal funds would create the distinct possibility that deadlines under state law would be extended past the deadlines in the federal act. That being the case, it would not be possible for me to certify that state law, as it would be constituted upon the enactment of Assembly Bill 128 with the proposed amendment, *Page 118 
provides adequate legal authority to carry out a program required under sec. 402 of the federal act.
RWW:SMS